**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gordon G. ATWELL, Jr.,**
**Defendant-Appellant.**

**No. 84–1012.**

United States Court of Appeals,
Tenth Circuit.

June 24, 1985.
Rehearing Denied July 18, 1985.

Stephen Jones and Susan McNaughton of Jones, McNaughton & Blakley, Enid, Okl., for defendant-appellant.

William S. Price, U.S. Atty., Frank Michael Ringer, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

Before LOGAN and SETH, Circuit Judges, and SAFFELS, District Judge *.

PER CURIAM.

Gordon Atwell appeals his conviction under 18 U.S.C. §§ 1341 and 1342 for mail fraud and aiding and abetting. He was found guilty by a jury on all sixteen counts of the indictment. Appellant bases his appeal on asserted errors in evidentiary rulings and on limitations placed on cross-examination of a government witness.

The facts of the case arise out of the oil fields of Oklahoma. The appellant worked for Major Oil Company, a Texas corporation engaged in promoting oil well drilling ventures. It assembled limited partnerships for wells and acted as the general partner. The company then hired oil field contractors to drill and complete the wells.

Over the past decade John Holden who was president of Major had headed a succession of similar companies. These were operations where a group of salesmen would solicit by telephone the participation of investors in drilling ventures. The appellant had been one of these salesmen and had been associated with John Holden since 1972. The two were friends. Evidently the appellant received as compensation a percentage of the amounts invested by the limited partners. John Holden was to be the principal witness for the government in the prosecution of appellant.

John Holden sent the appellant to Oklahoma to supervise the drilling and completion of the wells for Major. The appellant was in charge of all local activities, hired the subcontractors and supervised the drilling. While succeeding in making Major's Oklahoma venture more profitable the appellant also embarked on a kickback scheme. Because he had the authority to contract with third parties to provide materials and services, he instructed his suppliers and subcontractors to add a certain amount to their invoices in excess of what they normally would have charged. Major Oil Corporation then mailed payment to these suppliers. After receiving payment the suppliers paid the added amount to the appellant. He used a dummy consulting firm to disguise the scheme. The evidence shows the appellant never performed any consulting services.

Admitting that he took the kickbacks, the appellant's theory of defense was based on the assertion that John Holden, Major's president, knew and approved of the scheme. Thus because Major Oil and Holden were essentially interchangeable the company could not have been defrauded if its president had knowledge of the kickbacks. John Holden's knowledge would eliminate an essential element of the crime.

---

* Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation.

The appellant testified John Holden knew all along about the kickbacks and under his version the primary inducement for his moving to Oklahoma was that he would receive ten percent of the Oklahoma ventures. He also testified that John Holden cautioned the appellant that the ten percent cut could not be disclosed in the company's prospectuses. As a consequence the appellant under his version was supposedly encouraged to surreptitiously concoct his own methods for generating the expected compensation.

John Holden as a witness for the government testified he neither encouraged nor had any knowledge of the kickback scheme. Another corporate officer gave substantially similar testimony and also testified about another side venture of the appellant. The corporation learned that the appellant had begun a drilling mud business called Discount Drilling Fluids. The appellant when acting as an employee of Major would purchase the services of Discount Drilling. When the arrangement came to light, the appellant was instructed to choose between working for one or the other firm. He chose to remain with Major and it was at this point that John Holden ostensibly encouraged him to find a less visible way to make his money. The government argued at trial that it was inconsistent to suppose the corporation would discourage the appellant from engaging in one scheme merely to encourage him in undertaking another. It was critical, therefore, that the appellant attack John Holden's credibility as an honest businessman who had been defrauded by a trusted employee.

The defense indicated that it would introduce a great deal of evidence concerning John Holden's past in the business promotion world. The government made a pretrial motion in limine to prevent the evidence from being admitted. The evidence consisted of evidence of a prior felony conviction for fraud with a revocation of parole; evidence of prior arrests on fraud charges; evidence of federal and state violations of securities laws and the entry of consent judgments and injunctions on those

violations; evidence that John Holden had characterized his felony conviction as a misdemeanor in the prospectus of one of the limited partnerships.

The trial court allowed the defense to use the prior felony fraud conviction even though it had occurred more than ten years before. The court also allowed the defense to use the mischaracterization of the fraud conviction in the prospectus. The court granted the government's motion insofar as the evidence of prior arrests and securities violations. Thus the appellant was precluded from examining the witness on those matters. He was thus examined on the felony conviction for fraud and its mischaracterization.

Appellant presents three issues on appeal. First, did the trial court's limitation of the scope of Holden's cross-examination deny the appellant his right of confrontation under the Sixth Amendment? Second, did the government suppress evidence of Holden's past in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215? Finally, did the court err in allowing the government to put on evidence of similar kickbacks received by appellant that were not charged in the indictment?

■ Cross-examination is not an absolute or unlimited right in confrontation. *See Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597. As long as the defendant's basic confrontation right is protected, it is within the trial court's discretion to limit the scope of cross-examination. *United States v. Valentine*, 706 F.2d 282 (10th Cir.). We indicated in *Valentine* that issues as to limitations of cross-examination take two basic forms. The first is where the trial court precludes inquiry into an entire *area* of relevant cross-examination and there the defendant's confrontation rights may be violated. *Id.* at 287–88. *See also United States v. Jorgenson*, 451 F.2d 516, 519 (10th Cir.). The second type of limitation is directed only to the general *extent* of cross-examination. There limiting the scope of cross-examination is within the discretion of the trial court. Such limi-

tations will not compel reversal unless an abuse of discretion clearly prejudicial to the defendant occurs. *United States v. Valentine*, 706 F.2d at 288. *See also United States v. Alderete*, 614 F.2d 726, 728–29 (10th Cir.).

■ The record demonstrates in the present case that the appellant was not barred from pursuing an entire area of relevant inquiry. The trial court allowed defense counsel to examine John Holden on his felony conviction. When the witness attempted to equivocate on the mischaracterization in the prospectus defense counsel required the witness to read aloud the relevant portion of the prospectus containing the misstatement. Record, Vol. VI at 188. Thus it is clear the appellant was able to develop the credibility issue. The court simply limited the scope of the inquiry into the witness' past and, accordingly, the court's actions must be measured against the second element of the *Valentine* test.

The evidence the appellant sought to introduce, as mentioned, concerned John Holden's problems with the Securities and Exchange Commission and was not directly relevant to the type of fraud with which the appellant was charged. As a consequence, the trial court viewed the evidence as potentially confusing to the jury. None of the evidence dealing with John Holden's violations of securities laws involved a kickback scheme. The court acted within its discretion in limiting the scope of credibility cross-examination.

Federal Rule of Evidence 403 permits the trial court to exclude what might otherwise be admissible evidence when the danger of confusion of the issues or misleading the jury substantially outweighs the probative value of the evidence. We agree with the trial court that the potential for confusion surpassed any utility the evidence might have. In any event, the evidence was cumulative as the honesty of the witness had already been made an issue.

■ The same is true of the evidence of John Holden's prior arrests that did not result in convictions. The appellant argues that Federal Rule of Evidence 608(b) compels the admission of the evidence of the arrests because they bear on Holden's truthfulness. Rule 608(b) does no such thing. The trial court in its discretion may allow inquiry into the prior conduct of a witness concerning his character for truthfulness. The rule does not require inquiry. Additionally, Rule 608(b) is still subject to the balancing under Rule 403 mentioned above.

We cannot conclude that disallowing the contested evidence was an abuse of discretion. The ruling satisfied appellant's confrontation rights.

The appellant next argues that his due process right to a fair trial was denied by the government's suppression of "exculpatory" evidence. The suppression assertedly constituted a violation of the rule set out in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. The information which is asserted that the government did not disclose concerned a second felony conviction of Mr. Holden in 1968. The conviction occurred at roughly the same time as the conviction upon which the court allowed cross-examination. It was for drawing a check without funds with intent to defraud. The appellant asserts that disclosure of this additional felony conviction should have been made to the jury.

■ On appeal this point is framed by appellant as a *Brady v. Maryland* issue, but it was quite different in the trial court. Appellant makes this clear in his brief in this court wherein he describes what took place at trial:

"Following the trial, in support of the Motion for New Trial, the defendant filed as exhibits true and correct copies of all of the material that it would have relied upon had cross-examination been permitted. This material was not introduced in evidence at the trial because of the court's ruling on the Motion In Limine. The substance of the material, however, was made as a part of the response to the Motion In Limine and the offer of proof."

There is attached to appellant's brief in support of motion for new trial as "Exhibit 'I'", "which would have been relied upon had cross-examination been permitted," a copy of an order from the Ohio Department of Licensing and Regulation wherein the Director recites as a fact supporting the revocation of John Holden's real estate license that he had been convicted of two felonies in 1968 in Ohio and the details were described.

The appellant's point in his motion for new trial was that the "material" was not introduced because of the ruling on the motion in limine. The appellant thus acknowledges that *at trial* he had all the information recited in the exhibits to his brief in support of his motion for new trial, as the above quotation recites. There was no *Brady* issue presented to the trial court. The appellant cites *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, in its brief in support of motion for new trial but this refers to *all the evidence* excluded by the ruling on the motion in limine and is accompanied with a lack of fair trial argument arising from the ruling. Since no *Brady* issue was before the trial court we will not consider the issue on this appeal. We must treat the felony convictions, the arrests, the prohibitions from doing business in certain states and the security violations all as part of the issue of the restriction on cross-examination, thus within the ruling on the motion in limine as described above.

■ The appellant further contends that the trial court erred in admitting evidence against him of uncharged crimes. The evidence consisted of testimony by various suppliers that they had paid Specialized Consultants, the appellant's dummy firm, kickbacks for doing business with Major Oil. The testimony was offered under Rule 404(b). The trial court allowed the evidence under the theory that it showed the appellant's intent and planning, and that it demonstrated the scope of the kickback scheme. The court gave the appropriate limiting warning to the jury, instructing that the evidence of similar activities on the part of the appellant was not offered to prove he acted in conformity with the pattern of uncharged crimes.

■ The appellant argues that the court failed to properly perform the balancing test of Rule 403 as to this evidence. The appellant contends that because he admitted taking kickbacks the evidence of other similar acts was not reasonably necessary to the government's case. Thus because the appellant's defense rested on the premise that he could not defraud a company whose sole shareholder approved his actions, it was prejudicial to allow further evidence of acts he had already admitted. Under this view the evidence was cumulative; its probative value did not outweigh its substantial prejudicial effects.

After initially allowing some of the 404(b) evidence, the court questioned whether further evidence of the same sort was necessary in light of the appellant's admissions. The government acknowledged that the appellant admitted he received the money; the issue was *how* he received the money. Thus the government argued that the evidence was designed to show the appellant's intent and whether he was authorized to take the kickbacks. Under this view the evidence is relevant to the issue of the nature of the scheme. The trial court ultimately agreed with the government. Accordingly the court allowed the evidence for the limited purpose of showing the nature of the scheme, to rebut the contention the scheme had been authorized by John Holden and to show the manner in which the transactions occurred. We conclude that the trial court did not abuse its discretion in admitting the evidence.

In *Morgan v. United States*, 355 F.2d 43 (10th Cir.), we concluded that "[e]vidence of other crimes than the one charged must however have a real probative value, and not just a possible worth on issues of intent, motive, absence of mistake or accident, or to establish a scheme or plan." *Id.* at 45. In the case before us, the evidence of other similar and recent kickbacks has

real probative value when offered to show the appellant's overall plan.

We have also required the evidence to bear a clear and logical connection with the case actually being tried. *United States v. Burkhart*, 458 F.2d 201, 206 (10th Cir.). Such a connection is apparent here. In *United States v. Parker*, 469 F.2d 884 (10th Cir.), we reiterated that the evidence cannot be of remote and unconnected offenses. Proximity in time is also necessary. *United States v. Nolan*, 551 F.2d 266, 271 (10th Cir.). Thus, where the evidence tends to show intent, planning, or the existence of a common scheme, where the evidence has real probative value, and the uncharged acts bear a logical connection both in time and characteristics with the charged offense, the trial court may allow its admission. The court has broad discretion under Rule 403 to compare the value of the evidence with its possible prejudicial impact. Absent a clear abuse of discretion, the determination of the trial court will not be disturbed. We fail to find a clear abuse of discretion in the present case. Thus we find no error in the admission of the evidence.

The court's evidentiary rulings and the record as a whole demonstrate no reversible error. Accordingly, the judgment is AFFIRMED.