[No. A047814. First Dist., Div. One. Jan. 18, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT F. DUCU, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to rules 976 and 976.1 of the California Rules of Court, this opinion is certified for publication with the exception of parts II-IV.

## COUNSEL

Fiedler, Gardner & Derham and Cliff Gardner for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Jeremy Friedlander, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEIN, J.**—Robert F. Ducu appeals from the judgment of convictions for the commission of multiple sex crimes. He was convicted of one count of rape and one count of oral copulation against Ms. M., and three counts of rape, two counts of oral copulation and one count of penetration by a foreign object against Ms. F. The jury also found true allegations that appellant used a deadly weapon with respect to the acts committed against Ms. M., and one of the rape counts involving Ms. F. Appellant was sentenced to a total term of 18 years.

### ANALYSIS

### I.

■ Appellant first contends that the court violated his constitutional right to confront the witnesses against him by limiting the time he would

have to cross-examine Ms. M., who had returned to the United States for the sole purpose of testifying, and who needed to return to Japan to avoid arousing the suspicions of her parents, who were unaware that she had been raped or was testifying against appellant.

Originally, Ms. F. and Ms. M. were scheduled to return to Japan together on Friday, September 15, 1989. However, Ms. F.'s testimony continued until 11:14 a.m. on Friday. Ms. M. therefore rescheduled her flight for Saturday. On Friday, Ms. M. was on the stand for direct examination for approximately three and a half hours. Cross-examination began at 4:25 p.m. At 6 p.m. the court then met with the attorneys and Ms. M., in chambers, to discuss the obvious problem created by the fact that Ms. M. was scheduled to return to Japan the next day. The court initially was willing to continue to hold court until 7 p.m., at which time one of the jurors would have had to leave, but defense counsel stated he would be unable to finish his cross-examination in the remaining hour. The parties urged Ms. M., who was not under subpoena, to stay until Monday. She explained, through her interpreter that her parents thought she was in the United States to sightsee, and that a departure delayed more than a day would arouse their suspicions. The court considered a Saturday session, but was told one of the jurors would be unavailable. Defense counsel represented that he had "at least" another hour and a half of cross-examination. The court therefore told Ms. M. that it would have to insist that she return on Monday to testify. The court stated: "I will start this case Monday morning at 9:15. I want you both here at 9:15. I want to make sure that she is out at the airport by 11:30 at the latest. *So you two will gauge yourselves in terms of how much time you have.* We started [cross-examination] at about 4:30. You have gone about an hour and a half at least under cross-examination . . . . I want her out of here on the way to the airport by 11:30. Is that fair to both of you? Is that clear?" Both the prosecutor and defense counsel responded "Yes."

The court reconvened on Monday morning and cross-examination resumed at 9:25 a.m. The court warned defense counsel when it was 10:25, 11, and then at 11:15 gave defense counsel time to ask three more questions. The district attorney took five minutes for redirect, and the court gave defense counsel five minutes to re-cross. When defense counsel indicated he had additional questions, the court gave him an additional 10 minutes. Then, over defense counsel's objection, the court ordered that the cross-examination be concluded and that Ms. M. be taken to the airport.

It is axiomatic that the accused in a criminal trial must be provided a reasonable opportunity to effectively cross-examine the witnesses against him. (*Delaware* v. *Van Arsdall* (1986) 475 U.S. 673, 680 [89 L.Ed.2d 674,

683-684, 106 S.Ct. 1431].) At the same time, however, the "trial judges retain wide latitude insofar as the confrontation clause is concerned to impose reasonable limits on . . . cross-examination[,] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." (*Id.* at p. 679 [89 L.Ed.2d at p. 683].) The confrontation clause " 'guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " (*Ibid.*)

Appellant relies on cases where the trial judge precluded defense counsel from any cross-examination as to a particular area that is relevant to the credibility of the witness. (See, e.g, *United States* v. *Haimowitz* (11th Cir. 1983) 706 F.2d 1549, 1559 [71 A.L.R.Fed. 78]; *United States* v. *Atwell* (10th Cir. 1985) 766 F.2d 416, 419-420.) In this case, however, the court placed *no* limitation on the substance of the cross-examination in any particular area. The only limit placed on defense counsel was the amount of time that he would have, a limitation that, at least as of Friday evening, defense counsel represented would accommodate his needs. The substance of the cross-examination, the amount of time and detail to be allotted to any given area, and the order in which each subject of cross-examination would be addressed was entirely within the control of defense counsel. Thus, if the time limitation imposed by the court was reasonable, any limitation on cross-examination in any particular area was the result of counsel's choice, not the court's limitation.

The court gave counsel at least as much time to conduct his cross-examination as he gave to the district attorney for direct, and made every effort to ensure that defense counsel had the opportunity to cross-examine the witness on all areas he deemed important. Thus, the record supports the conclusion that the court's limitation on the time allotted to cross-examination was reasonable, and afforded defense counsel an opportunity, whether or not he availed himself of it, effectively to cross-examine Ms. M.

If any error resulted in an infringement of appellant's constitutional right to cross-examine the witnesses against him, it was harmless under the standard set forth in *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]. Appellant contends that as a result of the time limitation the court imposed, he was unable to cross-examine Ms. M. in the following areas: (1) prior inconsistent statements made to the police, (2) why she waited four hours before reporting the incident; (3) bias against the defendant, and (4) details of the second sexual act committed against Ms. M.

Yet, appellant was able to introduce evidence of Ms. M.'s prior inconsistent statements to the police through the direct testimony of the inspector who interviewed Ms. F. and Ms. M. after the assault occurred. Confronting Ms. M. with these statements on cross-examination would have been merely cumulative. Regarding appellant's claim that he was precluded from examining Ms. M.'s bias against him, we note that he was in fact able to cross-examine her regarding any bias she might have had: Substantial parts of the cross-examination were clearly directed towards demonstrating that Ms. M. disliked or was hostile to appellant, perhaps because he paid so much attention to her friend Ms. F.[1] Although appellant did not cross-examine Ms. M. regarding the four-hour delay in reporting the event, the fact that appellant devoted little or no time in closing argument to this point supports our conclusion that this was a point of only marginal relevance, and of very little assistance to appellant, especially in light of the very simple and obvious explanation offered by Ms. F. that they were in a strange country, knew no one except Mrs. Y., and were reluctant to call anyone in the small hours of the morning. Finally, appellant does not explain what details of the "second sexual act" he was precluded from exploring, but we note that he did cross-examine Ms. M. on this subject and that he had time to ask exactly the same questions regarding the details of the second act, i.e., intercourse, as he had with respect to the first act, i.e., oral copulation.

Although the credibility of the two complaining witnesses was indeed central to the case, there were several independent pieces of evidence that corroborated the victims' story and that appellant could not explain away. This evidence included: (1) the slip of paper with appellant's license number taken down by Ms. M. when he dropped them off; (2) the fact that the victims concealed from appellant the location where they were actually staying; (3) the puncture wound on Ms. M.'s arm in a place typically described as a defensive wound; and (4) irritation at Ms. F.'s vaginal opening that the examining doctor testified was more consistent with nonconsensual sex than consensual sex.[2]

In sum, even if appellant had cross-examined Ms. M. in all the areas he claims he was precluded from delving into, we are certain, based on a consideration of the record as a whole, the result would not have been any different. We conclude that if any error occurred at all it was harmless beyond a reasonable doubt. (*Delaware v. Van Arsdall, supra*, 475 U.S. at pp.

---

[1] Appellant does not specify what bias he sought to demonstrate, but this is the only type of bias referred to in the record.

[2] Indeed, unlike the typical sexual assault case that pits the defendant's word against that of the victim, the evidence in this case did include some corroborating physical evidence and the corroboration of the victim's story by an additional witness, i.e., the other victim.

679-680 [89 L.Ed.2d at p. 683-684]; *Chapman* v. *California, supra*, 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711].)

## II.-IV.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### CONCLUSION

The judgment is affirmed.

Racanelli, P. J., and Dossee, J., concurred.

---

* See footnote, *ante,* page 1412.