**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Theodore Martin NOVAK, Jr., Defendant–Appellant.**

**No. 89–2064.**

United States Court of Appeals, Tenth Circuit.

Nov. 1, 1990.

Paul J. Kennedy, Albuquerque, N.M., for defendant-appellant.

David N. Williams, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, SETH and LOGAN, Circuit Judges.

SETH, Circuit Judge.

Defendant-appellant Novak appeals from his conviction for possession with intent to distribute less than 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Defendant appeals two actions of the district court. He argues that the district court erred in denying his motion for a mistrial after the prosecutor in the government's case-in-chief failed to substantiate factual statements made during opening argument. Defendant also argues that the district court erred in failing to allow a two point sentence deduction under the Sentencing Guidelines. For the reasons that follow, we reverse the trial court's denial of a mistrial and remand. Because of our ruling on the mistrial issue, we do not reach the applicability of the two point sentencing reduction.

Novak was arrested after a search of his residence revealed 496 grams of cocaine. Apparently acting on information from an undisclosed informant, surveillance was initiated of the appellant's house. Although surveillance was sporadic, sufficient indicia of illegal drug activity was discovered to obtain a search warrant.

The warrant was executed on July 14, 1989 through a cooperative effort of D.E.A. agents, the Special Weapons and Tactical Team of the Albuquerque Police Department, the Bernalillo County Sheriff's Office and the Bureau of Alcohol, Tobacco and Firearms. Four hundred ninety-six grams of cocaine packaged in different sized bags were found under Novak's kitchen sink. A loaded semi-automatic Uzi machine pistol and a loaded Smith and Wesson revolver were also found in different parts of the house.

At trial defendant admitted that the cocaine found in his house was in his possession. He argued, however, that the cocaine was for his personal use and he had no intent to distribute. The key, of course, to the government's case was proving Novak intended to distribute the cocaine.

During the government's opening argument, the prosecutor made two references to evidence tending to prove Novak's intent. First, over objection of defense counsel, the prosecutor was allowed to tell the jury that "a citizen reported and provided information to the various DEA agents that the Defendant ... was selling cocaine from his house...." Rec.Vol. II at 20–21. The prosecutor also stated that the government would introduce evidence showing that the cocaine was 91% pure.

The prosecutor failed to introduce evidence at trial to support either claim. The trial court ruled that the evidence regarding the citizen's tip was hearsay, and no evidence was sought to be introduced supporting the prosecutor's statement regarding the purity of the cocaine. Based on this failure to substantiate claims made during opening argument, Novak moved for a mistrial at the close of the government's case-in-chief. The trial court denied the motion stating that although there was no direct evidence supporting either of the prosecutor's statements, the statements did not cause sufficient harm or prejudice to result in a mistrial. Novak appeals this ruling.

██ The decision to deny a motion for a mistrial is within the discretion of the trial court judge and we will reverse only if there is a showing that the trial court judge abused that discretion. *United States v. Tolman,* 826 F.2d 971, 974 (10th Cir.1987), *citing Mares v. United States,* 409 F.2d 1083 (10th Cir.1968). We will find an abuse of discretion if the trial court "made a clear error of judgment or exceed-

ed the bounds of permissible choice in the circumstances." *United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir.1986). To determine whether a prosecutor's failure to introduce facts at trial supporting statements made during opening argument should result in a mistrial, we look to whether the prosecutor acted in good faith and we look at the impact the statements had on the particular trial. *Tolman,* 826 F.2d at 973. *See also, United States v. Martinez–Nava,* 838 F.2d 411, 416 (10th Cir.1988). Our rationale in *Tolman* is directly applicable to the present case.

In *Tolman,* we affirmed the trial court's denial of a motion for a mistrial. The prosecutor in the government's opening statement told the jury that the defendant's fingerprints were found at the crime scene. On direct examination, however, the criminalistics expert was unable to identify the glass from which the fingerprints were taken. This resulted in a court ruling that no fingerprint evidence was admissible. The defendant moved for a mistrial which the trial court denied.

On appeal, in *Tolman,* the defendant conceded that the prosecutor acted in good faith but argued that the prejudicial effect of the prosecutor's reference to the fingerprint evidence was "devastating." *Tolman,* 826 F.2d at 973. We rejected this argument based on the trial court's instructions to the jury that opening remarks were not to be considered evidence, and the closing arguments of both the prosecution and defense. Central to our decision was the fact that:

> "[t]he Government did not attempt to capitalize on any innuendo regarding the actual presence of such fingerprint evidence and the 'technicality' that prevented the jury from considering it."

*Id.* at 974.

The present case differs greatly from *Tolman.* First, Novak argues that the prosecutor was not acting in good faith. He contends that the prosecutor knew that the testimony involving the citizen tip was questionable on hearsay grounds. The defendant further contends that the prosecutor acted in bad faith by referring to the purity of the cocaine found in the defendant's kitchen without introducing substantiating evidence. The government responds that it "reasonably believed" the information regarding the citizen tip would be admitted as evidence, and that the statement regarding the purity of the cocaine was an "isolated remark" which was only unsubstantiated due to an "oversight" which the government admits it made.

■ The government correctly states its burden during opening argument. "The prosecutor's opening statement should be an objective summary of the evidence reasonably expected to be produced...." *United States v. Brockington,* 849 F.2d 872, 875 (4th Cir.1988). This objective summary, however, does not allow the prosecution to refer to evidence of questionable admissibility, *United States v. Hernandez,* 779 F.2d 456 (8th Cir.1985), or evidence unsupported at trial.

■ The prosecutor in the present case exceeded the permissible scope of an opening statement by referring to the information contained in the citizen's tip. Although the government argues that it was introducing this evidence to establish the basis for the D.E.A.'s investigation, and not for the truth of the matter asserted, the prosecutor's actual statement to the jury far exceeded the government's asserted purpose. The statement that "a citizen reported and provided information ... that the Defendant ... was selling cocaine from his house ...," Rec.Vol. II at 20–21, cannot be equated with "routine testimony" used by police officers to establish why they commenced an investigation. *See United States v. Morales–Macias,* 855 F.2d 693, 695 (10th Cir.1988). Moreover, the prosecutor should have been well aware of the hearsay problems with this testimony given the government's resistance to Novak's efforts to require the government to disclose the name of the informant.

The government's initial argument regarding the prosecutor's reference to the purity of the cocaine is that Novak is precluded from raising this issue because he did not preserve it for appeal. The government contends that Novak was required to

object to the statement during the prosecutor's opening argument because Novak knew that, through an "oversight", the government's stipulation omitted the purity of the cocaine found in Novak's kitchen. This "oversight" cannot be blamed on defendant as the government here seeks to do. The government's stipulation had been given pretrial consideration. It was read by the government at trial after the testimony of its first witness. The stipulation said nothing about the purity of the cocaine and no witness testified as to it. The government's chemist did not testify. We are satisfied that Novak's Motion for a Mistrial at the end of the government's case was sufficient to preserve this issue for appeal.

Standing by itself, it is unlikely that the prosecutor's reference to the purity of the cocaine in his opening argument would provide sufficient grounds to reverse the trial court's denial of a mistrial. From the record, however, it is clear that this was not an "isolated remark" as the government contends. During the direct examination of D.E.A. Agent Small, the prosecutor went into a detailed set of hypothetical questions regarding the difference between the purity of user level cocaine and high purity cocaine. At one point in the questioning, the prosecutor asked Agent Small to determine how much user level cocaine, at 30–35% purity, could be made from 90% pure cocaine:

"Q. And if you seized cocaine or if cocaine is found in the higher quantity, would you explain to the jury how it gets from a higher level purity down to user level?

. . . .

"A. ... Let's say, originally, for argument's sake, you have a hundred percent cocaine; you take a hundred percent, a kilo up here, and then you[r] cutting agent here, and then you have two kilos of 50 percent.

"Q. All right. *Let's assume 90 percent.*

"A. 90 percent? Then you have—if you took a pound, and a pound, you have two pounds of 45 percent cocaine."

Rec.Vol. II at 124–125 (emphasis added). There were many other hypothetical questions of this witness relating to purity. From the prosecutor's hypothetical questions and Agent Small's response above, the jury was again led to believe without proof that the cocaine seized from the defendant was in the high purity, 90–91%, range. The government sought as a basic element of its case to have the jury infer that the defendant was a distributor because the cocaine seized was of high purity and a user would not have that quantity of high grade cocaine. However, the quantity was shown but nothing was shown about the purity except the inferences sought to be drawn by the above hypothetical questions which attempted to show no more than a second tier of inferences.

The government in its brief (page 8) states: "Although the cocaine was in fact 91% pure [footnote 1], no evidence of purity was introduced during the course of the trial." The footnote, "Pre–Sentence Report (PSR) at 4," is apparently authority for the purity element and was included in the report although there was no evidence whatsoever on the subject.

Given the absence of any direct evidence whatsoever supporting the prosecutor's use of the 90–91% purity figures, we find that the prosecutor here, unlike the prosecutor in *Tolman,* was attempting to capitalize on evidence which was inadmissible because of a technicality—namely, the government's "oversight" in preparing the stipulation. This, combined with the attempt to use the citizen's tip, is sufficient to satisfy the first prong of the *Tolman* test.

■ Absent a showing of prejudice to the defendant, prosecutorial misconduct alone will not support a finding that the trial court abused its discretion. *See United States v. Martinez–Nava,* 838 F.2d 411 (10th Cir.1988). To determine whether Novak was prejudiced "we look to the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case as a whole." *Id.* at 416.

Novak argues that the district court's single instruction to the jury that the open-

ing statements were not evidence was insufficient to cure the extensive prejudice resulting from the prosecutor's opening statement. We agree. Unlike *Tolman,* this case does not involve a single unsubstantiated statement, and unlike *Tolman,* the prejudice to the defendant did not end after the opening.

Moreover, the prosecutor's errors were particularly prejudicial to Novak in light of the completely circumstantial nature of the government's case against him. No direct evidence whatsoever was introduced implicating Novak directly or indirectly in a distribution scheme nor of any isolated incidents. Instead, the government's case was built solely on inferences drawn from weapons and scales found in Novak's house, the positioning of Novak's furniture, and the quantity of cocaine found in Novak's kitchen.

Many of these inferences were discredited at trial. Novak effectively explained, for example, that the scales were used to weigh motorcycle engine parts in his motorcycle rebuilding business. This was substantiated by other witnesses. The government's contention that the evidence proving Novak intended to distribute the cocaine was "overwhelming" is simply untenable.

Accordingly, the trial court judge's ruling on the mistrial is REVERSED and we REMAND this case to the district court.