UNITED STATES of America, Plaintiff,

v.

Pat MARCY and Fred Roti, Defendants.

No. 90 CR 1045.

United States District Court,
N.D. Illinois, E.D.

Dec. 28, 1992.

See also 814 F.Supp. 670.

Terence Patrick Gillespie, Marc William Martin, Genson, Steinback & Gillespie, and Thomas Michael Breen, Martin, Breen & Merrick, Chicago, IL, for defendants.

Tom Durkin, Asst. U.S. Atty., Chicago, IL, for plaintiff.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Presently before the court is defendant Fred Roti's motion for mistrial. For the reasons set forth below, Roti's motion is denied.

### I. Background

It is no accident that approximately two years have passed between defendants' arraignment and the commencement of their trial on December 14, 1992. Indeed, much of the delay is attributable directly to Roti. Not only did Roti opt to postpone his trial until after the resolution of two related cases but, once this case was set to proceed on a date agreed to by his attorney, Roti's attorney made himself unavailable by becoming involved in the trial of a complicated and lengthy out-of-state matter. Further, upon the completion of the out-of-state proceedings, Roti decided to discharge his attorney, turning to another lawyer who was completely uninformed regarding the substantive and procedural posture of the ongoing action.

The long delayed trial finally commenced on December 14. After the completion of five days, Roti's codefendant, Pat Marcy, was afflicted with a medical condition sufficiently serious to warrant a mistrial on his behalf.[1] In an apparent attempt to piggyback on Marcy's misfortune, Roti has filed a motion for mistrial of his own advocating yet another detour.

In support of his motion for mistrial, Roti offers the following arguments. First, as the evidence introduced concerning the *Aleman* and *Colella* fixes—fixes which do not directly involve Roti—would not have been admissible against Roti had he initially stood trial alone, forcing Roti to defend against such charges upon Marcy's departure would violate his constitutional right to a fair trial. Second, Roti asserts that he has been prejudiced by the "organized crime-outfit-mafia-syndicate-mob connotations" that have been injected into the trial to date, such references only permissible by virtue of Marcy's presence as a defendant. Third, as a result of our procedure requiring defendants in multiple-defendant trials to pool their preemptory challenges, Roti contends that the jury as selected does not represent the "tribunal" that he would have garnered had he been tried alone from the outset. Roti's fourth claim to a mistrial rests with his assertion that, had he known that he was facing trial alone, "he would have advanced a different defense, made a different opening statement and foregone the concessions associated with a joint defense." Finally, Roti maintains that, with Marcy's absence, the government will not be able to prove some of the facts it recounted in its opening argument, thus mandating a mistrial. We address, and reject, each of Roti's contentions seriately.

## II. Discussion

At the threshold, we note that a trial judge possesses "broad discretion in deciding whether, in the context of the entire trial, a defendant's motion for a mistrial should be granted." *United States v. Mealy*, 851 F.2d 890, 902 (7th Cir.1988). At the crux of this determination is whether the questioned event so prejudices the defendant to deny him a fair trial. *See United States v. Phil-*

lips, 640 F.2d 87, 91 (7th Cir.), *cert. denied*, 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981). Further, to the extent that this court finds that any incident may cause a defendant prejudice, it is within our discretion to issue a cautionary instruction, rather than declare a mistrial, to cure such potential prejudice. *See United States v. McClellan*, 868 F.2d 210, 217 (7th Cir.1989); *Mealy*, 851 F.2d at 902; *United States v. Fulk*, 816 F.2d 1202, 1205–06 (7th Cir.1987).

### A. The *Aleman* and *Colella* Fixes

The first of Roti's five purported grounds for mistrial indisputably constitutes the heart of his motion. To be sure, the government and Roti have taken diametric positions on the issue of the admissibility of evidence concerning the *Aleman* and *Colella* fixes in a trial with Roti as the sole defendant. Because this court believes that such evidence would be admissible against Roti had he initially stood trial alone, and because the probative value of the evidence outweighs its prejudicial impact, we conclude that, despite the introduction of this contested evidence prior to Marcy's leave, continuing the proceedings against Roti would not deprive him of a fair trial.

In support of his assertion of the immateriality of the *Aleman* and *Colella* fixes, Roti contends that these occurrences "constitute separate conspiracies, not involving Roti, within the context of the overall RICO charges." Motion for Mistrial at 2. Citing *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), Roti claims that due process mandates that he not be called upon to defend against such highly prejudicial acts having no connection to his personal conduct. In *Kotteakos*, the Supreme Court held that the government may not try thirty-six defendants as members of a single conspiracy when the only connection between the number of separate conspiracies was that one man participated in all of the conspiracies. *Kotteakos*, 328 U.S. at 773, 66 S.Ct. at 1252. The defendants were convicted under 18 U.S.C. § 88, of conspiring to violate the National Housing Act, 12 U.S.C. §§ 1702, 1703, 1715, 1731. *Id.* at 752, 66

---

1. It is not certain at this time when, if at all, Marcy's health will permit his retrial.

S.Ct. at 1241. Defendants obtained federal housing loans through a single broker on the basis of false and fraudulent information. *Id.* at 752–53, 66 S.Ct. at 1242. The broker formed the "common center" of the conspiracy, obtaining loans for separate groups independent from one another. *Id.* at 754–55, 66 S.Ct. at 1243. Significantly, the government conceded that the proof adduced at trial showed multiple conspiracies, rather than the one conspiracy charged in the indictment. *Id.* at 755–56, 66 S.Ct. at 1243. The Court found that the variance between the proof at trial and the allegations in the indictment was not harmless beyond a reasonable doubt because the evidence presented to the jury on the many separate conspiracies ran a substantial risk that the jury would unconsciously transfer guilt from one conspiracy to another. *Id.* at 774, 66 S.Ct. at 1252.

*Kotteakos*, however, bears no resemblance to the instant case. Unlike the defendants in *Kotteakos*, Roti is charged with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, including conspiracy under § 1962(d). As this court has stated on numerous occasions, most recently in connection with Roti's motion to dismiss Count I of the indictment, "a series of agreements that under pre-RICO law would constitute multiple conspiracies could under RICO be tried as a single 'enterprise' conspiracy in violation of § 1962(d)." *United States v. Marcy*, 777 F.Supp. 1393, 1396 (N.D.Ill.1991); *United States v. Andrews*, 754 F.Supp. 1161, 1169 (N.D.Ill.1990) (quoting *United States v. Sutherland*, 656 F.2d 1181, 1192 (5th Cir.1981), *cert. denied*, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982)). It follows that, although Roti may reasonably claim no direct participation in the *Aleman* and *Colella* fixes, such evidence would nonetheless be materially relevant in his individual trial, "because the government is 'entitled to show the entire range of evidence of the [§ 1962(d)] conspiracy against each' defendant." *United States v. Gambino*, 784 F.Supp. 129, 137 (S.D.N.Y.1992) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1304 (2d Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987)); *see also United States v. Persico*, 621 F.Supp. 842, 852 (S.D.N.Y.1985).

More to the point, as necessary elements under RICO, the government bears the burden of establishing an "enterprise" and a "pattern of racketeering." 18 U.S.C. § 1962(c); *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992). It is settled law that "[p]roof of these elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nonetheless, evidence of those acts is relevant to the RICO charges against each defendant...." *DiNome*, 954 F.2d at 843; *see also United States v. Gambino*, 784 F.Supp. at 136 (denying motion to sever because the "evidence relating to racketeering acts allegedly committed by [movants'] codefendants ... would likely be admissible in individual trials to prove the existence and nature of a RICO enterprise and a pattern of racketeering activity on the part of each defendant, by proving the requisite relationship and continuity of illegal activities").

In the instant case, Count I of the superseding indictment alleges that an "enterprise" existed, "consisting of a group of individuals associated in fact known as the 'First Ward.'" This group allegedly included Roti, Marcy and other members known and unknown to the grand jury. "The individual members of the enterprise frequently met at Counselor's Row Restaurant in Chicago. Among the purposes of the enterprise were obtaining money, obtaining and maintaining influence over official decisions, and exercising influence over official decisions." Clearly, evidence of the *Aleman* and *Colella* fixes tends to make it more probable than not that such an enterprise in fact existed. Further, evidence of these fixes is necessary to establish the nature of the enterprise and, hence, relevant regardless of whether Roti was directly involved in either incident. As poignantly noted by the government, "the *Aleman* and *Colella* fixes ... provide a nexus between the three predicate acts with which defendant Roti is charged—the *Chow* fix, the zoning fix and the *Eldridge v. Carr* fix." Government Response at 2. Indeed, evidence of these two fixes precludes "an argu-

ment by Roti that the *Chow* fix, which involved the fix of a murder case, was somehow so materially different from the zoning fix and the *Eldridge v. Carr* fix—the other predicate acts with which Roti is charged—as to be outside the pattern of racketeering activity by the enterprise." *Id.* at 2–3.

Given that the evidence of the *Aleman* and *Colella* fix would be relevant in his individual trial, Roti nonetheless claims that such evidence could not be admitted for fear of "spillover prejudice." To bolster this contention, Roti relies upon this court's opinion in *United States v. Andrews*, 754 F.Supp. 1161, 1178 (N.D.Ill.1990), in which we granted defendants' motions for severance because trial in the form suggested by the government "raise[d] the specter of 'spillover prejudice' and the resulting danger of 'guilt by association' such that each defendant's right to an independent determination of his guilt or innocence [was] jeopardized." Contrary to Roti's assertion, however, this case is no *Andrews*. The "labyrinthine" 175–count indictment in *Andrews*, nearly two-inches thick and weighing almost four pounds, named 38 defendants, 37 of whom were alleged to have been members or associates of the El Rukns, an infamous Chicago street gang. *Id.* at 1164. In severing the indictment into five separate trials, we noted that severance was required because of the extreme evidentiary disparity as to each defendant:

> At one end of the spectrum, three defendants have been charged with the commission of less than five racketeering acts under RICO. This group includes Isiah Kitchen, who is charged with only two narcotics-related acts and a separate weapons possession offense. Four other defendants are charged with only five racketeering acts. Moving along the spectrum, several other defendants are charged with twelve or more racketeering acts. Among this group is James Speights, who is accused of nineteen racketeering acts, including participation in seven murder conspiracies and one witness kidnapping. At the far end of the spectrum, Alan Knox is charged with thirty-nine racketeering acts.

These acts include two murders, participation in ten murder conspiracies, and the illegal purchase of a LAW rocket with the intent to perform terrorist acts against the United States on behalf of the Libyan government.

*Id.* at 1178. However, in so describing the evidentiary disparity in *Andrews*, this court took great pains to convey the rarity of the circumstance confronting the court, and stated that "[g]enerally, unless the disparity of evidence is unquestionably severe, courts presume that the jury will faithfully" discharge their duty as detailed in the jury instructions. *Id.* In contrast to the situation in *Andrews*, where the jury would have had to keep straight 38 different defendants involved in well over 250 factually separate criminal acts committed from 1966 to 1989, there is little, if any, danger that the addition into Roti's trial of the *Aleman* and *Colella* fixes will impair the jury's ability to discharge their duty in accordance with the jury instructions. Accordingly, as the similarity between the instant case and *Andrews* is dispelled, so too is Roti's claim of mistrial based on a disparity of the evidence.

Therefore, the only limit on the admission of the *Aleman* and *Colella* fixes—and thus Roti's final claim to a mistrial on the basis of such evidence—rests in Roti's claim that the probative value of the evidence is outweighed by its prejudicial effect and, as such, would have been excluded under Federal Rule of Evidence 403 in a trial with Roti as the sole defendant. We, however, reject the notion that such evidence must be excluded under Rule 403. True, in allowing evidence of incidents relevant to prove the existence of the enterprise, some amount of prejudice accrues to those defendants who were not directly involved in the particular incident. This is no doubt the case regarding the admission of evidence of the *Aleman* and *Colella* fixes at a separate trial of Roti. Nonetheless, this evidence is directly relevant to at least two elements of a RICO violation and, hence, we conclude that the probative value of the *Aleman* and *Colella* fixes is not outweighed by their prejudicial impact.[2]

**2.** In assessing the extent of the prejudice endured by Roti in connection with the evidence of the

*Aleman* and *Colella* fixes, we note that Robert Cooley has yet to be cross-examined on these

In sum, as evidence of the *Aleman* and *Colella* fixes would be admissible in a trial with Roti as the sole defendant, the introduction of such evidence prior to Marcy's leave does not warrant a mistrial on Roti's behalf.

## B. References to Organized Crime

■ Roti's second ground for mistrial is his claim that he has been prejudiced by evidence of Marcy's connection to organized crime injected into the trial to date. Specifically, Roti contends that had he stood trial alone from the outset, such references to organized crime would not have surfaced at trial. Roti is mistaken. To be sure, this very matter has been the subject of at least two motions previously filed by Roti. As this court stated in an opinion dated March 19, 1992, the relevance of such references rests "not as inflammatory language to bandy about in front of the jury, but as explanations of behavior and motivation." *United States v. Marcy*, No. 90 CR 1045, slip op. at 9 (N.D.Ill. Mar. 19, 1992). For instance, "Cooley's fear of being caught by Marcy or other organized crime figures wearing a recording device, the government will contend, explains the absence of some taped evidence," including evidence relating to the *Chow* fix. *Id.* That Marcy is no longer on trial does not alter the rationale for the admissibility of Marcy's connection to organized crime.

## C. The Use of Preemptory Challenges

■ In support of mistrial, Roti also asserts that, because this court requires defendants in multiple-defendant cases to pool preemptory challenges, the jury as selected does not represent the "tribunal" that he would have garnered had he been tried alone from the outset. Specifically, Roti claims that he sought to seat venire-person James Brannigan only to be overruled by the Marcy faction. In the end, Roti has no right to be tried by a jury of persons solely of his own

choosing. In the absence of an offer of facts tending to show that " 'the jury as finally selected was other than representative and impartial,' " Roti's motion for mistrial cannot be sustained on this ground. *United States v. Sandoval*, 847 F.2d 179, 184 (5th Cir.1988) (denying mistrial based on allegations that a codefendant who plead guilty in the middle of the trial exercised preemptory challenges in a manner that the remaining defendants would not have used) (quoting *United States v. Hooper*, 575 F.2d 496, 498 (5th Cir.), *cert. denied*, 439 U.S. 895, 99 S.Ct. 256, 58 L.Ed.2d 242 (1978)); *see also United States v. Daniele*, 886 F.2d 1046, 1055 (8th Cir.1989) (same).

## D. Roti's Theory of Defense

■ Roti maintains that he is entitled to a mistrial because "had [he] known that he would be facing trial alone, he would have advanced a different defense, made a different opening statement and foregone the concessions associated with a joint trial." Motion for Mistrial at 6. We disagree. Roti is, and has always been, free to present any substantial theory of defense that either he or his attorneys could devise. The opportunity to "point the finger" at Marcy was available prior to the grant of Marcy's mistrial.[3] To the extent that Roti wished to avail himself of such an antagonistic defense, he should have raised the issue in a pretrial motion for severance or misjoinder. That Roti did not raise the matter prior to trial precludes him from asserting that the lack of such an opportunity now affords him the right to a mistrial, a disingenuous assertion at best.

## E. Government's Failure to Prove Facts

■ Roti's final argument in furtherance of his motion for mistrial is premised upon

---

matters. However, contrary to Roti's contention, the mere fact that Marcy will not be able to cross-examine Cooley regarding the two fixes does not mandate a mistrial. Despite the fact that Roti may not have been directly involved in the *Aleman* and *Colella* fixes, as discussed above, these fixes nonetheless are relevant to the establishment of an "enterprise" and a "pattern of racketeering," two elements necessary to the RICO charges facing Roti. As such, Roti will be

afforded the opportunity to inquire into the *Aleman* and *Colella* fixes in his cross-examination of Cooley. The fact that Roti, as a matter of trial strategy, may opt to bypass these fixes on cross-examination is inconsequential to the current motion for mistrial.

**3.** Indeed, notwithstanding his opening statement Roti is still free to assert any defense he wishes.

the assumption that the government will not be able to prove numerous prejudicial facts asserted in its opening statement. *See United States v. Novak*, 918 F.2d 107, 111 (10th Cir.1990) (trial court should have granted a mistrial where government acting in bad faith failed to prove facts asserted in opening argument). Roti's contention fails for two separate reasons. First, the prejudicial facts that Roti assumes the government will not be able to prove presumably revolves around the *Aleman* and *Colella* fixes. Specifically, it appears that Roti assumed the evidence would be stricken as irrelevant to his trial and, as such, the government would be left with no substantive evidence regarding the statements detailing these fixes in its opening argument. Such evidence, however, will not be stricken as irrelevant and, hence, we cannot determine with any degree of certainty that the government is destined to fail to introduce facts at trial to support the statements made during its opening argument. Second, Roti neglects to mention that the court in *Novak* regarded the prosecutor's bad faith as essential to the grant of a mistrial in instances where the government fails to present evidence at trial in support of the statements in its opening argument. *See Novak*, 918 F.2d at 109–10. Roti makes no such allegation of bad faith, nor can we discern such based on the government's conduct to date. Consequently, Roti's motion for mistrial cannot be sustained on the ground that the government will not be able to support at trial the statements made in its opening argument.

### III. Conclusion

For the reasons explained above, Roti's motion for mistrial is denied. It is so ordered.