FILED
**United States Court of Appeals**
**Tenth Circuit**

**October 18, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NATHAN DALE SMITH,

    Defendant - Appellant.

No. 23-7068
(D.C. No. 6:22-CR-00004-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **CARSON**, and **FEDERICO**, Circuit Judges.
_____

A jury convicted Nathan Dale Smith of two criminal counts related to Smith's sexual assault of his minor stepdaughter, K.B. The district court sentenced him to 87 months on the first count and 24 months on the second count, to be served concurrently. Smith now appeals his conviction. He argues that the district court erred by limiting cross-examination about a previous sexual abuse against K.B.'s sister by a different perpetrator and by failing to

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

declare a mistrial based on an improper question from the prosecutor. Smith contends that these errors require us to reverse his conviction and remand this case for a new trial. Because we find no error in the district court's rulings and because we find any error would be harmless, we affirm.

## BACKGROUND

### I.    Factual Background

In late 2020, Smith began to sexually assault his then-fourteen-year-old stepdaughter, K.B. He lived in a small house in Cromwell, Oklahoma with K.B., K.B.'s mother (Ashley Smith), and K.B.'s younger sisters (J.S. and E.S.). Smith sexually abused K.B. multiple times in their Cromwell house. They later moved from Cromwell to Ada, Oklahoma, where he continued to abuse her.

By October 2021, K.B. decided she "couldn't keep it in anymore" and disclosed the ongoing sexual abuse to her mother. App. vol. I, at 56–59. Ashley confronted Smith that same night. He confessed that he had molested K.B. multiple times after Ashley went to bed. Ashley immediately left with her daughters for her mother's residence. Soon after leaving, she received a text message from Smith. He apologized, stated that he had messed up, begged for forgiveness, declared that he would not survive if locked up, and blamed his actions on "the smoke." *Id.* at 63. Ashley took a screenshot of the message and reported Smith on the same day. Local police conducted forensic interviews of K.B. and her sisters. The case ultimately went to the federal authorities.

## II.      Procedural Background

### A.      Indictment

A federal grand jury returned a two-count indictment charging Smith with sexual abuse of a minor in Indian country, in violation of 18 U.S.C. §§ 2243(a), 2246(2)(C), 1151 & 1153; and abusive sexual contact in Indian country, in violation of 18 U.S.C. §§ 2244(a)(3), 2246(3), 1151 & 1153. The indictment lists K.B. as the victim of the charged crimes.

### B.      Trial

Smith's jury trial began on September 6, 2022. The government called three witnesses: K.B., Ashley Smith, and Officer David Cowans. Certain exchanges during the testimonies of these government witnesses drive this appeal.

#### 1.      K.B.

K.B. testified that Smith began sexually assaulting her when she was fourteen years old. She stated that Smith would touch "[m]y boobs, my butt, and then my vagina." App. vol. I, at 35. He continued to abuse her until she told her mother about the abuse. After these disclosures, K.B., her mother, and her sisters moved to live with K.B.'s grandmother. At the time of her testimony, she was sixteen years old and had lived with her grandmother for over a year. She was around Smith for about thirteen years and stated that he raised her.

3

During cross-examination, defense counsel asked about other issues in their household. K.B. stated that Smith and her mother "would argue all the time" and that "[a]pparently he raised his fists at her." *Id.* at 46. She denied that Smith had taken away her cell phone soon before she told her mother of the abuse. Defense counsel then sought to ask whether one of K.B.'s sisters had been molested in the past, but the government objected to this question. The district court sustained the objection. Defense counsel requested a bench conference and explained that the question would demonstrate that K.B. knew accusing someone of sexual assault would result in that person's removal from their home. The district court maintained its prior ruling and found that the question "is prejudicial and substantially outweighs the relevancy." *Id.* at 48.

### 2.    Ashley Smith

The government next called K.B.'s mother, Ashley Smith, as a witness. Ashley identified Smith as her husband and testified that she had known him since high school. They began a relationship ten years ago. At the time, K.B. was six years old; Smith became a father figure to K.B. She explained that K.B. "was definitely [Smith's] favorite" and characterized their relationship as "really close." *Id.* at 55.

Ashley recounted the night that K.B. revealed the abuse. While out on the porch together, K.B. informed her mother of the abuse, stating that she "couldn't keep it in anymore." *Id.* at 58–59. Ashley told K.B. to take her sisters to her room and lock the door. Ashley then woke Smith by yelling at him. She

kept asking what he did to her child. Smith sat up, confessed to the abuse, and apologized. He told her that he could not recall how many times he touched K.B. He stated that he "was high" and "would do it after [Ashley] went to bed." *Id.* at 59. After the confrontation, Ashley took her daughters and left for her mother's home. She then described the text message she received from Smith apologizing for his actions and blaming it on "the smoke." *Id.* at 63.

On cross-examination, Ashley stated that she did not remember any arguments that weekend about K.B.'s inappropriate cell phone use. She agreed with defense counsel that Smith "raised his fist" and placed his hands on her that weekend. *Id.* at 66–67. Defense counsel requested another bench conference and advised the district court of his intent to ask about the earlier sexual molestation of K.B.'s sister. He reiterated that the sister's prior molestation would merely show K.B.'s understanding that an accused man "gets out of the house quickly." *Id.* at 70. Again, the district court disallowed this question.

### 3.    Officer David Cowans

Officer Cowans served as a detective on this case and testified about his findings. As part of the investigation, he scheduled forensic interviews of K.B. and K.B.'s sisters. Two exchanges during Officer Cowans's testimony are relevant to this appeal.

First, the government had established that Officer Cowans observed K.B.'s forensic interview and asked whether, based on his experience and

5

training, he believed "there was a sexual assault that occurred." *Id.* at 76–77. The district court sustained defense counsel's objection to this question before Officer Cowans could respond. *Id.* at 77. At defense counsel's request, the district court also instructed the jury to ignore the question. *Id.*

Second, during direct examination, Officer Cowans explained that he had scheduled forensic interviews with K.B.'s sisters because they also lived with Smith. The prosecutor asked if there were "any disclosures made by those children,"[1] and Officer Cowans answered no. *Id.* At cross-examination, when Officer Cowans repeated that K.B.'s sisters made no disclosures, defense counsel responded, "But one of them did accuse somebody else." *Id.* at 80. The government objected to this line of questioning, and the district court sustained the objection. *Id.*

### 4.    Defense Witnesses

The defense presented the following theory of the case: K.B. falsely accused Smith of sexual assault because she was angry that he had taken her cell phone away. Smith's nephew, Smith's mother, and Smith himself testified as defense witnesses. The nephew stated that he overheard Smith and Ashley fighting about K.B. "sending nasty pictures to friends" and about taking K.B.'s phone away. *Id.* at 102. Smith reiterated this account during his testimony. He testified that he did not sexually abuse K.B. Instead, he testified, he had

---

[1] We understand the testimony about "disclosures" to refer to the reporting of sexual abuse, and we use it in that sense in this order too.

6

discovered that K.B. sent inappropriate pictures and took away her phone. After Ashley returned K.B.'s phone, Ashley and Smith had fought all weekend; he admitted that he had "[g]rabbed her and threatened to hit, hurt her." *Id.* at 118–19. Smith claimed that K.B. had accused him of sexual assault due to her anger toward him for taking her phone away. He said that his apology text message was about his fight with Ashley, not about K.B.

### C.    Rule 29 Motion and Motion for Mistrial

At the close of the government's case, defense counsel moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. He argued that the evidence, even when viewed in the light most favorable to the government, failed to show that Smith committed the charged crimes. Defense counsel also moved for a mistrial based on the prosecutor's improper question to Officer Cowans. As mentioned, the prosecutor had asked Officer Cowans if he believed K.B. was sexually assaulted after observing her forensic interview. Though the district court instructed the jury to disregard the question (which Officer Cowans did not answer), counsel asserted that the instruction failed to sufficiently mitigate the question's prejudice. Finally, defense counsel argued that the government had opened the door to questions about other disclosures from K.B.'s sister to impeach Officer Cowans and as part of his theory of the case.

The government responded that the evidence was sufficient for a reasonable jury to find Smith guilty. It argued that the district court's

instruction for the jury to disregard the question adequately stemmed any prejudice from the prosecutor's question to Officer Cowans. Though the government acknowledged that the question "could have been phrased better," the prosecutor explained that she had intended for the question to elicit why the investigation moved forward, not for commentary on Smith's guilt. *Id.* at 91–92. The government also argued that the scope of Officer Cowans's direct examination had been limited to disclosures about any sexual abuse by Smith, not other perpetrators.

The district court denied both motions. The court first noted that the government could have phrased the question about the sisters' disclosures more clearly but declined to find that there was "any misleading of the jury." *Id.* at 93–94. For the mistrial motion, the court found that its instruction sufficiently mitigated any harm from the prosecutor's improper question. And for the Rule 29 motion, the court determined that a reasonable jury could find Smith guilty on both counts.

Defense counsel renewed the Rule 29 motion and motion for mistrial at the close of evidence. The district court denied both motions again for the same reasons.

### D.     Verdict and Sentencing

After a two-day trial, the jury found Smith guilty on both counts. On September 27, 2023, the district court sentenced Smith to 87 months on the first

count and 24 months on the second count, to be served concurrently. Smith timely appealed his conviction.

## DISCUSSION

Smith challenges his conviction based on the district court's limitation of cross-examination and on prosecutorial-misconduct grounds. He argues that the district court (1) violated his Sixth Amendment right to confrontation by limiting cross-examination on K.B.'s sister's interview disclosures of sexual abuse by a different perpetrator than Smith, (2) violated Federal Rule of Evidence 611(b) by preventing defense counsel from cross-examining Officer Cowans on disclosures from K.B.'s sister, and (3) abused its discretion by failing to declare a mistrial based on the prosecutor's improper question to Officer Cowans. He contends that these errors require us to reverse his conviction and remand the case for a new trial. We disagree and, exercising our jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

I.  **The limitations on cross-examination for disclosures from K.B.'s sister did not violate the Confrontation Clause.**

The Sixth Amendment's Confrontation Clause provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him" in a criminal prosecution. U.S. Const. amend. VI. A district court may violate the defendant's right to confrontation if it precludes an entire relevant area of cross-examination. *United States v. Lonedog*, 929 F.2d 568, 570 (10th Cir. 1991). But at the same time, "the Confrontation Clause guarantees an

*opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).

District courts have wide latitude to reasonably limit cross-examination based on "concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). In reviewing a district court's decision to limit cross-examination, we evaluate "whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias." *United States v. Swingler*, 758 F.2d 477, 498 (10th Cir. 1985) (cleaned up). "As long as the defendant's basic confrontation right is protected, it is within the trial court's discretion to limit the scope of cross-examination." *United States v. Atwell*, 766 F.2d 416, 419 (10th Cir. 1985).

We review de novo whether the district court violated Smith's Sixth Amendment confrontation rights by restricting cross-examination and whether any such violation was harmless. *United States v. Gault*, 141 F.3d 1399, 1403 (10th Cir. 1998). Smith challenges the district court's decision to limit cross-examination on a disclosure that K.B.'s sister made about her own sexual assault. He argues that this limitation violated his confrontation right because he could not fully present his theory of the case. His defense focused on K.B.'s alleged motive to falsely accuse Smith of sexual assault and asserted that K.B.

10

was mad at Smith for taking her phone away. He claims that when K.B.'s sister was sexually assaulted, K.B. had learned that a sexual-assault accusation would result in the accused being removed from the family. And he argues that evidence was essential to explain K.B.'s motive to lie about a sexual assault. This limitation affected defense counsel's cross-examination for all government witnesses. Smith's argument is not persuasive for several reasons.

### A.    The limitation was narrowly tailored to preclude marginally relevant, confusing, misleading, and prejudicial information.

"[A] criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his defense." *United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005). Evidence is relevant if it tends to make the existence of a material fact more or less probable than without the evidence. Fed. R. Evid. 401. "Materiality is defined by substantive law." *United States v. Begay*, 937 F.2d 515, 521 (10th Cir. 1991). Here, Smith was charged with sexual abuse of a minor in Indian country and abusive sexual contact in Indian country, which require showing that he knowingly engaged in a sexual act or sexual contact with K.B. 18 U.S.C. §§ 2243(a), 2244(a)(3).

Defense counsel hoped to elicit testimony about K.B.'s sister accusing another person of sexual assault. This separate allegation concerned a different victim and a different perpetrator. It is irrelevant to whether Smith knowingly engaged in a sexual act or sexual contact with K.B. At best, the information might marginally contribute to Smith's theory of the case by conceivably

11

showing that K.B. would have known her accusation would cause Smith's removal from their family. But the relevance of this testimony is weak at best.

Even assuming this information about K.B.'s sister has some minimal relevance to Smith's defense, the district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. The testimony that Smith sought to elicit on cross-examination would likely have confused the jury by mixing the charged offenses before the court with the facts of a separate sexual-assault allegation in the same family. This confusion would create a high risk that the jury may misinterpret the evidence. The information might also unfairly prejudice the government by portraying K.B.'s family as prone to making accusations of sexual abuse. Allowing defense counsel to cross-examine witnesses on the sister's earlier sexual-abuse allegation against a different perpetrator would have provided little probative evidence but raised significant concerns about jury confusion, misleading the jury, and unfair prejudice. Based on these factors, we conclude that the disclosure's probative value is substantially outweighed by the dangers listed in Rule 403. The district court correctly limited cross-examination on the sister's disclosure.

### B.    Smith presented his theory of the case.

Despite the limitation on cross-examination, Smith could still pursue his theory of the case at trial. Defense counsel argued that K.B. falsely accused Smith of sexual assault and identified a supposed motive to do so. He cross-

examined K.B. and Ashley about any fights over K.B.'s cell phone use. K.B. responded that she had no disputes with Smith that weekend and denied that Smith had taken her phone before her accusation. Ashley similarly recalled no conflicts that weekend about K.B.'s phone use or inappropriate text messages. The defense was also able to call two witnesses, Smith and his nephew, who testified about arguments over K.B.'s phone use. The record demonstrates that Smith had ample opportunity for effective cross-examination to develop his defense. *Van Arsdall*, 475 U.S. at 679. Given the extensive testimony on this issue, we conclude that the limitation on cross-examination did not "preclude[] an entire relevant area of cross-examination." *Lonedog*, 929 F.2d at 570. The jury had sufficient information to evaluate K.B.'s potential motives and bias. *Swingler*, 758 F.2d at 498.

Smith cites *United States v. Mann*, 145 F.3d 1347, 1998 WL 171845 (10th Cir. 1998) (unpublished table decision), to support his Confrontation Clause argument, but the case is inapt. In *Mann*, a defendant argued that the district court violated his right to confrontation by limiting his cross-examination of the witness who accused him of sexual abuse. 1998 WL 171845, at *2. As part of his strategy to discredit the witness, the defendant wanted to cross-examine the witness about a prior burn incident involving the witness's father. *Id.* She had previously accused her father of pushing her into a stove, which resulted in Child Protective Services removing the witness from her family. *Id.* The witness later recanted this account against her father. *Id.*

13

CPS could not verify the alleged child abuse and returned the witness to her family. *Id.* The defendant's theory of the case was that the witness accused the defendant instead of her own father of sexual abuse because she did not want CPS to remove her from her family again. *Id.* We found a violation of the defendant's confrontation rights based on the district court barring *all* questioning on the witness's burn incident and prior false accusation. *Id.* at *3. This limitation prevented the defendant from presenting a motive for the witness's false accusation. *Id.*

Unlike the defendant in *Mann*, Smith had the opportunity to cross-examine the government's witnesses about K.B.'s motive to falsely accuse Smith of sexual assault. For the defendant's theory of the case in *Mann*, the burn incident formed the crux of the witness's motivation to lie about sexual assault. By contrast, for Smith's theory of the case, the cell phone fight, not the sister's disclosure, motivated K.B. to falsely accuse him of sexual assault. As discussed above, defense counsel cross-examined K.B. and Ashley about any fights over K.B.'s inappropriate cell phone use. Smith and his nephew also testified about the fight. Smith stated his belief that K.B. falsely accused him of sexual assault because of her anger from that incident. The limitation on cross-examination did not detract from Smith's ability to present his theory of the case.

The restricted testimony in *Mann* also related to the victim's own history of abuse and prior false accusation. But here, the testimony that Smith sought

to elicit involved a different victim and different perpetrator than those in the charged crimes. *Mann* is therefore not an apt comparison. We find no violation of the Confrontation Clause and affirm the district court's ruling.

### C. Any error from the district court's limitation on cross-examination would be harmless.

Even if the district court had violated Smith's right to confrontation by limiting cross-examination on the sister's disclosure, any alleged error would be harmless. To determine whether a violation of the Confrontation Clause is harmless, we consider the following:

(1)  the importance of the witness's testimony in the prosecution's case;

(2)  whether the testimony was cumulative;

(3)  the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points;

(4)  the extent of the actual cross-examination; and

(5)  the overall strength of the government's case.

*United States v. Burke*, 571 F.3d 1048, 1057–58 (10th Cir. 2009). "If the error is harmless beyond a reasonable doubt, [the defendant]'s conviction need not be overturned." *Id.* at 1057.

The first, fourth, and fifth factors support a finding of harmless error. For the first factor, any witness testimony about a disclosure from K.B.'s sister has little bearing on this case. The sister's disclosure of sexual abuse involved a different victim and a different perpetrator; these allegations are not relevant to

whether Smith sexually abused K.B. This factor weighs in favor of harmless error.

For the extent of actual cross-examination, the record demonstrates that Smith had substantial opportunity to develop, and did develop, his theory of the case. Defense counsel cross-examined both K.B. and Ashley on arguments with Smith over K.B.'s cell phone use. He properly explored potential reasons for K.B. to falsely accuse Smith of sexual assault and incorporated the testimony into his argument. Defense counsel effectively cross-examined the prosecution's witnesses to develop the theory of the case, and the limitation had minimal effect on the defense. *United States v. Oliver*, 278 F.3d 1035, 1041 (10th Cir. 2001) ("The Confrontation Clause does not require the admission of potentially inflammatory and irrelevant testimony when a defendant has other avenues to attack a witness's credibility.").

Finally, the strength of the government's case supports a finding of harmless error. As a witness for the prosecution, K.B. testified in detail about the abuse she suffered from Smith. Her mother, Ashley, corroborated her story and testified about an inculpatory text message she received from Smith. Smith's only evidence was his own testimony that he did not sexually abuse K.B. The record demonstrates that the government presented a strong case against Smith. Further cross-examination on the disclosure from K.B.'s sister about a different perpetrator would not "reasonably . . . have been expected to affect the jury's deliberations." *Burke*, 571 F.3d at 1058. Based on these factors

we are confident that any alleged Confrontation Clause error was harmless beyond a reasonable doubt.

## II. The limitation on cross-examination of Officer Cowans for disclosures from K.B.'s sister did not violate Federal Rule of Evidence 611(b).

Smith also argues that the district court improperly limited the cross-examination of Officer Cowans. He asserts that under Federal Rule of Evidence 611(b), the government opened the door to questions about disclosures that K.B.'s sisters made against third parties. Rule 611(b) provides that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b). When a party "opens the door on a particular (and otherwise inadmissible) line of questioning, such conduct operates as a limited waiver allowing the [other party] to introduce further evidence on that same topic." *United States v. Lopez-Medina*, 596 F.3d 716, 730–31 (10th Cir. 2010). Any limits on the extent of cross-examination "will not compel reversal unless an abuse of discretion clearly prejudicial to the defendant occurs."[2] *Atwell*, 766 F.2d at 419–20.

---

[2] We have recognized two types of errors in limiting cross-examination. *United States v. Valentine*, 706 F.2d 282, 287 (10th Cir. 1983). The first type is when an error precludes inquiry into an entire relevant area of cross-examination, which violates the defendant's right of confrontation. *Id.* at 287–88. The second type is when an error limits "only the *extent* of cross-examination." *Id.* at 288. The former requires de novo review, while the latter is reviewed for abuse of discretion. *Id.*; *Gault*, 141 F.3d at 1403. Most of Smith's argument in this section focuses on a violation of Rule 611(b) without mention of the Confrontation Clause. Because we have concluded that the limit

(*footnote continued*)

17

Smith contends that the following exchange during Officer Cowans's direct examination opened the door to questions about the sister's disclosure of sexual abuse:

| Government: | After you watched the forensic interview what did you do as a result of that? |
| --- | --- |
| Officer Cowans: | We scheduled two other interviews for the other children in the home. |
| Government: | Is that because Nathan Smith had contact with them? |
| Officer Cowans: | Yes. They also lived in the home with him. |
| Government: | To your knowledge were there any disclosures from those children? |
| Officer Cowans: | Repeat that, please. |
| Government: | Were there any disclosures made by those children? |
| Officer Cowans: | Not as to those two children, no. |

App. vol. I, at 77.

The above record shows, and the government concedes, that the exchange is somewhat ambiguous on whether the disclosures referred to disclosures about Smith or disclosures generally. At trial, the government stated that this exchange referred solely to disclosures that the other children may have made

---

on cross-examination did not "preclude[] an entire relevant area of cross-examination [in violation of the Confrontation Clause]," *Lonedog*, 929 F.2d at 570, we review whether the district court erred in limiting the extent of cross-examination under Rule 611(b). We therefore find abuse of discretion to be the appropriate standard of review here. For the last two sentences where Smith tacks on a violation of the Confrontation Clause, that argument is covered elsewhere.

18

about Smith. Officer Cowans's responses also suggest that he interpreted the government's question that way. Given the question's context about the sisters' contact with Smith, the government's consistent position that the sister's disclosure against a third party is irrelevant, and Officer Cowans's understanding of the question, the district court reasonably concluded that the government did not open the door to disclosures from K.B.'s sisters about third parties. And as discussed, even with this limitation, Smith had ample opportunity to develop his theory of the case, including through the cross-examination of K.B. and Ashley. We find no abuse of discretion.

III.    **The prosecutor's question to Officer Cowans does not warrant a mistrial.**

Finally, Smith argues that the district court should have declared a mistrial based on the prosecutor's question to Officer Cowans. Specifically, the prosecutor had asked Officer Cowans whether he believed a sexual assault had occurred based on K.B.'s forensic interview. Smith asserts that the district court's instruction to the jury that it disregard the question did not sufficiently mitigate the prejudice from this question.

"[W]hen the defendant objects at trial based on prosecutorial misconduct, the district court sustains the objection and takes curative action such as giving a jury instruction, and the defendant . . . asks for a mistrial, we review for abuse of discretion." *United States v. Anaya*, 727 F.3d 1043, 1052 (10th Cir. 2013). To evaluate prosecutorial misconduct claims, we use a two-step process:

19

(1) We examine whether the conduct was, in fact, improper, and (2) if the conduct was improper, we then determine whether it warrants reversal. *United States v. Oberle*, 136 F.3d 1414, 1421 (10th Cir. 1998). We require reversal based on misconduct "only if there is reason to believe it influenced the jury's verdict." *United States v. Caballero*, 277 F.3d 1235, 1245 (10th Cir. 2002). "Absent a showing of prejudice to the defendant, prosecutorial misconduct alone will not support a finding that the trial court abused its discretion." *United States v. Novak*, 918 F.2d 107, 110 (10th Cir. 1990).

Here, even if the prosecutor's conduct were improper, the record shows that it did not influence the jury's verdict. Defense counsel objected to the government's question before Officer Cowans could even respond. The district court sustained the objection and instructed the jury to ignore the last question. *See United States v. Preston*, 634 F.2d 1285, 1293 (10th Cir. 1980) ("The timely objection and the sustaining of the objection certainly detracts from a conclusion of prejudice."). No witness testimony even existed to influence the jury, let alone influence the jury to the extent of "convict[ing] . . . on an improper basis." *United States v. Kepler*, 74 F.4th 1292, 1316 (10th Cir. 2023); *see also Caballero*, 277 F.3d at 1245 ("The prosecutor's questions, objected to by the defense, stricken by the court, and unanswered by the witness, did not prejudice the defense."). "We ordinarily will not reverse if the misconduct was merely singular and isolated." *United States v. Ivy*, 83 F.3d 1266, 1288 (10th Cir. 1996) (cleaned up). Smith also cites no evidence that the jury failed to

20

follow the district court's curative instruction. *United States v. Christy*,

916 F.3d 814, 826 (10th Cir. 2019) ("We presume that juries follow the district

court's curative instructions unless there is reason to believe otherwise.").

Within the context of the entire trial, the prejudice from the prosecutor's single

unanswered question does not reach the high threshold required for reversal.

We find no abuse of discretion in the district court's denial of a mistrial.

## CONCLUSION

For these reasons, we affirm.

Entered for the Court

Gregory A. Phillips
Circuit Judge